O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HOWARD FORD, JR., )  CASE NO. ED CV 11-01050 RZ
)
          Plaintiff, )
)  MEMORANDUM OPINION
   vs. )  AND ORDER
)
MICHAEL J. ASTRUE, Commissioner )
of Social Security, )
)
          Defendant. )
)

        When Plaintiff turned 18, the Social Security Administration reassessed him to see if he still qualified for disability benefits, as he had as a minor. This the agency was required to do by law, and it was required now to assess him under the standards applicable to adults. 42 U.S.C. § 1382c(a)(3)(H)(iii). Among Plaintiff's complaints to this Court is the assertion that nothing changed other than Plaintiff's age. But, for many aspects of the law, a juvenile is held to one standard before he turns 18, and a different, more stringent standard thereafter. The question before this Court is not whether Plaintiff had greater capability once he turned 18, but rather whether the Administrative Law Judge's decision was backed by substantial evidence and was free of legal error. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

        Plaintiff asserts that the finding that he was mentally capable of working on a full-time basis was not supported by substantial evidence. Beyond the misconception that

Plaintiff's disability as a minor requires something more than the agency's evaluation under the standard 5-step analysis, this argument essentially is an argument that the Administrative Law Judge needed to develop the record further. Contrary to Plaintiff's argument, however, the Administrative Law Judge did not rely solely on the opinion of the consulting psychiatrist Dr. Bagner. He also referenced the records from the San Bernardino County Department of Behavioral Health. [AR 34]

Plaintiff asserts that it was "harmful error to accord great weight to Dr. Bagner's report." (Plaintiff's Memorandum in Support of Complaint 7:16). The consultant did not have the longitudinal record, it is true, but that did not make his report inaccurate. (As noted, the records were available to the Administrative Law Judge.) The Court does not understand the inconsistencies Plaintiff asserts to exist; quoting Plaintiff's statement that he feels "all right" is not inconsistent with a doctor's assessment that the Plaintiff has a mood disorder, not otherwise specified, and has borderline intellectual functioning.

The Administrative Law Judge could have contacted treating physicians, but he was not obligated to do so. Developing the record beyond what is present is an obligation that arises when there is a material ambiguity. *Mayes v. Massanari*, 276 F.3d 453,459-60 (9th Cir. 2001) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Plaintiff identifies no such ambiguity requiring that there be further contacting of the physician. The most that Plaintiff references is an increase in dosage of his medication Concerta, but that does not demonstrate a need to contact the physician further.

Plaintiff also contends that the Administrative Law Judge erred in his credibility assessments of both Plaintiff and his grandmother. While the Court agrees with Plaintiff that the Administrative Law Judge has relied largely on boilerplate language that appears in every decision, this is one of those circumstances in which the boilerplate language actually fits.

The Administrative Law Judge first listed a number of factors that, in the abstract, could be considered in assessing a witness' testimony. [AR 33] He then gave a

short statement about Plaintiff's testimony, and a short statement about Plaintiff's grandmother's testimony. [*Id.*] He said that the grandmother's testimony was not fully credible, and that the factors he considered in reaching this determination were whether she had a pecuniary interest in the outcome and whether the evidence is colored by kinship. [*Id.*] Presumably he meant that the grandmother's testimony was not fully credible because she *did* have a pecuniary interest in the outcome and because she *was* Plaintiff's kin.

As it turns out, however, the grandmother did not say very much. She made a statement that occupies only two pages of transcript; the only salient points contained in that statement are that Plaintiff has been prescribed Zyprexa, but does not always take it because it gives him headaches, and that "I see the pain that he goes through you know with his legs hurt and he can't move and they swell and we have to put ice packs on them" [AR 949-50].

As for Plaintiff, the Administrative Law Judge accurately recounted his testimony that Plaintiff applied for part-time jobs after school, and that the reason that he could not work full time was that he could not stand for more than 60 minutes nor sit for more than 30 minutes. [AR 33]

The Administrative Law Judge had this to say about credibility:

> After considering the evidence of record, I find that, since January 1, 2008, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

[AR 33] This statement is complete boilerplate, appearing again and again from one decision to another. It usually is not a sufficient basis for impeaching credibility, because it is so general and non-specific. In this case, however, "the reasons explained below" do give a proper basis for the Administrative Law Judge's statement.

Following the boilerplate, the Administrative Law Judge recounted the testimony of the medical expert as to Plaintiff's history of Osgood-Schlatter's disease, and the expert's belief that Plaintiff could perform within the capacity that the Administrative Law Judge identified. The Administrative Law Judge further referenced the results of the consultative internal medicine examination, which showed that the joints and back were normal, and various other results, all within the normal range. The Administrative Law Judge also summarized the report of the treating physician, indicating that, following the casting of both legs, Plaintiff had only minimal swelling, full range of motion, stable ligaments, and was intact neurologically. The Administrative Law Judge also referenced earlier x-rays that were normal. [AR 34]

This testimony stood in contrast to Plaintiff's testimony that he could only stand for an hour and sit for 30 minutes, and therefore, it impeached his credibility. One reason for impeaching credibility is that the testimony as to the medical symptoms conflicts with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001), *citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Thus, in this setting, the Administrative Law Judge did give valid reasons for not believing that Plaintiff was as incapacitated as he stated.

In this Court, Plaintiff also asserts that the Administrative Law Judge should have asked him about his ADHD, learning disorder or depression, and delved into the medication Plaintiff used, and its side effects. It is not clear why Plaintiff asserts this, however. Plaintiff points to no ambiguity in the record that required further development, *see Mayes v. Massanari*, *supra*, and Plaintiff does not say what information such questions would have elicited. Plaintiff does not even argue that the Administrative Law Judge

should have found other impairments than those he identified.  The Court sees no error here.

In accordance with the foregoing, the decision of the Commissioner is affirmed.

DATED: January 30, 2012

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE